ARTHUR JORDAN PIANO COMPANY, INCORPORATED, a corporation created by and existing under the laws of the State of Virginia, *v.* JAMES E. LEWIS.

(*January* 24, 1930.)

RICE, J., sitting.

*James R. Morford, Arthur G. Logan,* and *Howard Duane* (of Marvel, Morford and Ward) for plaintiff.

*Philip L. Garrett* and *Clarence A. Southerland* (of Ward and Gray) for defendant.

Superior Court for New Castle County, January Term, 1930. No. 21, November Term, 1927.

RICE, J., charging the jury:

This is an action brought by the Arthur Jordan Piano Company, Inc., the plaintiff, against James E. Lewis, the defendant, to recover $2,267.00, with interest from the sixteenth day of April, 1925, in which amount the plaintiff claims the defendant is indebted to it.

The pleadings filed in the case are numerous, long and of a technical nature, and I will not attempt to describe them to you as it is believed they would tend to confuse rather than assist you in reaching your verdict. However, an attempt will be made to state generally and briefly the claims and contentions of the respective parties as shown by the evidence.

The plaintiff claims that on the nineteenth day of December, 1921, it sold and the defendant purchased, under the terms of a conditional sale contract, a musical instrument known as the American Fotoplayer, for use in defendant's theatre at Middletown, Delaware. The purchase price was $3,600.00, on which the defendant was to receive a credit or an allowance of $400.00 for the instrument then in the theatre; the balance of the purchase price was payable in weekly installments. The defendant in addition to the $400.00 allowed as a credit, paid $933.00, making a total of $1,333.00 paid on the purchase price; the plaintiff seeks to recover $2,267.00, which it claims to be the balance due on the purchase price, together with lawful interest thereon.

The defendant admits the execution of the contract, the delivery of the Fotoplayer and its acceptance. He contends, however, that he is not indebted to the plaintiff company in the amount claimed by it, for the reason that at or about the time of making the contract in question, the plaintiff, through its authorized agent, undertook and agreed with the defendant that if he would for a reasonable time use his best efforts to advertise plaintiff's organs and pianos, throughout the State of Delaware, and would recommend its instruments to prospective purchasers, the plaintiff company would credit or allow to the defendant, one-fourth of the total purchase price of two organs; one then and there sold to the defendant for the sum of $3,600.00, for his theatre at Middletown, and the other

then and there sold to Plaza Theatre Corporation, a corporation of which the defendant was president, for the sum of $5,250.00; the credit or allowance amounting to $2,112.50, to be made at the latter end of the contract for the purchase of the organ for defendant's theatre at Middletown. The defendant declares that he fully performed his part of this independent or collateral parol agreement, but the plaintiff company has nevertheless failed and neglected to allow him the credit or allowance agreed upon. It is his contention that under the terms of this collateral oral agreement, the plaintiff company is indebted to him in the sum of $2,112.50, and that he is entitled to have this amount as an off-set or as a reduction of any amount which he may owe the plaintiff as a balance on the purchase price for the organ at Middletown. He admits, however, that after making the reduction as claimed by him, he still owes the plaintiff $54.50 with lawful interest thereon from April 16, 1925.

The plaintiff denies that it made any oral independent agreement with the defendant, or any agreement other than contained in the written contract of conditional sale, and denies that it is indebted to the defendant in any amount. It claims that the evidence as to the parol agreement is only an attempt on the part of the defendant to vary the terms and conditions of a written contract by oral evidence. It also claims that, even if the salesman, F. K. Ricksacker, made the oral agreement as contended by the defendant, it was not made within the scope and extent of his authority as agent of the plaintiff company, and, therefore, the company is not bound by the terms of such agreement.

In view of the fact that the defendant admits the execution of the contract of conditional sale and that under the terms of the contract a balance is due the plaintiff, the controversy between the parties is largely over the effect of the alleged collateral oral agreement, relied on by the defendant.

This is an affirmative defense set up by the defendant and the burden is on him to establish it to the satisfaction of the jury by a preponderance of the evidence.

As a general rule, extrinsic or oral evidence is not admissible to contradict, vary, add to, subtract from, or otherwise

modify the terms of a written contract. There are, however, certain cases to which this general rule does not apply, and among these are cases where the parol evidence in no way contradicts or alters the terms of the written contract, but tends to show a prior or contemporaneous independent collateral parol agreement, between the parties. *22 Corpus Juris, § 1662.*

It has been said that although a certain agreement between parties is reduced to writing, the law does not merge into such writing prior or contemporaneous agreements between the same parties which are distinct, valid, and not in conflict with the writing. The question whether the entire contract has been reduced to writing, or an independent collateral agreement was made, is a question of fact, and if there is any evidence to sustain the contention, it is a matter for the jury to determine, and not for the court. *Hines v. Willcox,* 96 *Tenn.* 148, 33 *S. W.* 914, 34 *L. R. A.* 824, 832, 54 *Am. St. Rep.* 823. And in the present case the Court is of the opinion that under the evidence the question should be submitted to you for your determination. In determining the question, it is your duty to consider all the evidence, including the conditional sale contract, its terms and conditions, as well as the other exhibits in the case.

If you find that there was no contemporaneous collateral independent contract as contended by the defendant, then, under such finding, the defendant would not be entitled to a set-off and your verdict should be in favor of the plaintiff for such amount as you may find from the evidence the defendant is indebted to the plaintiff with interest.

If, however, you find that there was such an agreement, then you must determine whether or not F. K. Ricksacker, with whom the defendant maintains he made the agreement, was acting within the scope of his authority as agent of the plaintiff company. If you should find that Ricksacker did not have authority to make the contract with the defendant, then the agreement would not be binding upon the plaintiff company.

As a general rule, persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain

not only the fact of the agency, but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it. *Mechem on Agency* (2d *Ed.*), *vol.* 1, §§ 743-763.

However, a principal is responsible for the act of his agent either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to this agent this authority. *Mechem on Agency, supra.*

In determining whether an assumed authority exists in a given case, there are certain principles to consider. Among these are (1) that the law indulges in no bare presumptions that an agency exists; it must be proved or presumed from facts; (2) that the agent cannot establish his own authority, either by his representations or by assuming to exercise it; (3) that even a general authority is not an unlimited one; and (4) that every authority must find its ultimate source in some act or omission of the principal. *Mechem on Agency, supra.*

It has been said that a third person, dealing with a special agent to sell, may fairly be charged with notice that there may be limitations as to kind, amount, price, or credit because such limitations are not unusual, but is not bound to anticipate or inquire about unusual limitations. *Mechem on Agency, supra.*

A person dealing with an agent must act with ordinary prudence and reasonable diligence. If he knows or has good reason for believing under all the facts and circumstances that the agent is exceeding his authority, he cannot claim protection. *Mechem on Agency, supra.*

In the present case, to find that the plaintiff company is bound by the alleged contemporaneous independent or collateral parol agreement, you must find at least one of three things from the evidence which are to be considered in connection with the law as stated: (1) That the plaintiff company expressly authorized F. K. Ricksacker to make the agreement; or (2) that he had implied authority to do so; or (3) that he had apparent authority.

If you find from the evidence that Ricksacker did not have authority of the principal either express, implied or apparent, to act as its agent in making the alleged collateral agreement with the

defendant, then his claim of a set-off cannot prevail, as under such a finding of facts he did not have the authority to bind the company.

If, on the other hand, at this point, you find the agent did act within the scope and extent of his authority to bind the plaintiff company in making the alleged collateral agreement, then it is necessary for you to consider and determine whether the defendant fully performed those services for the plaintiff which he promised and undertook to perform under the terms of such alleged contract. If your determination of this question should be that the defendant did perform the services as required, then the plaintiff would be indebted to the defendant for the value of the services at the price agreed upon, and he would be entitled to have any sum due him from the plaintiff for such services set off or deducted from such amount as you may find the defendant is indebted to the plaintiff as a balance due on the conditional sale contract.

If, on the other hand, your determination of this question should be that the defendant did not perform the services provided for in such agreement, then I will say to you that under the evidence in this case the defendant would not be entitled to a set-off of any amount against plaintiff's claim.

If you should find that the defendant is entitled to a set-off against plaintiff's claim, then your verdict should be in favor of the plaintiff for such amount as you may find remains after subtracting the amount of the set-off from the balance remaining unpaid on the conditional sale contract.

If you should find that the defendant is not entitled to a set-off against plaintiff's demand, then your verdict should be in favor of the plaintiff for such amount including interest as you may find from the evidence that defendant is indebted to the plaintiff company by reason of the purchase by the defendant from the plaintiff of the American Fotoplayer for defendant's theatre at Middletown.

(The Court then charged on conflict of testimony, credibility of the witnesses and weight and value of their evidence, and preponderance of evidence.)